# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LESTER ALLEN, | : | |
| Plaintiff, | : | |
| | | Case No. 3:13cv00140 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

On July 9, 2009, Plaintiff Lester Allen applied for Supplemental Security Income asserting that he was under a disability.  His application worked its way through the Social Security Administration's initial proceedings where it was denied.  It consequently fell to Administrative Law Judge Mary F. Withum to resolve Plaintiff's eligibility for benefits.  On January 14, 2012, ALJ Withum issued a written decision denying Plaintiff's benefits application.  She found that although Plaintiff had back problems (degenerative disc disease with stenosis) and problems in both shoulders (degenerative joint disease), he was not under a benefits-qualifying "disability" as defined in the Social Security Act, 42 U.S.C. §1382c.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

(Doc. #6, PageID at 74-82).

Plaintiff contends that ALJ Withum failed to properly evaluate the opinions of Plaintiff's treating medical personnel and failed to properly evaluate his credibility. He also argues that new and material evidence warrants a remand for further administrative proceedings. The Commissioner, finding no error in ALJ Withum's decision and no need for a remand, seeks an Order affirming her decision.

The case is before the Court upon Plaintiff's Statement of Errors and Supplemental Memorandum and Exhibits (Doc. #s 7, 10), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

This Court has jurisdiction in this case under 42 U.S.C. §1383(c)(3).

## II.    Background

### A.    Plaintiff and His Testimony

Plaintiff asserts that he is under a benefits-qualifying disability due to back injury and pain plus shoulder injuries and pain. On the date he filed for benefits (July 9, 2009), he was age 59 and thus considered a person of "advanced age" under Social Security Regulations. 20 C.F.R. §416.963(e) (eff. 4/1/2011).

His work history includes carpentry and other jobs in the home building/rehab industry. (Doc. #6, PageID at 218-22).

During his testimony before ALJ Withum, Plaintiff stated that he stopped working

temporary jobs in 2007 or 2008 due to his injuries and his resulting inability to do the type of construction work he had previously done. *Id*., PageID at 93-94, 98-99. His last full-time job ended in 1999. That job involved "basically everything from doing cement work to roofing, drywalling, two-by-fours, two-by-sixes..., carrying them in, carrying them out." *Id*., PageID at 96. He estimated that the weight he lifted in that job was "probably 30, 40 pounds, maybe a little bit more." (Doc. #6, PageID at 97). Plaintiff explained that he was incarcerated from 2000 to 2005, then he performed seasonal work (several months at a time) in a warehouse for a temporary service agency. The last seasonal work he performed was in 2007 or early 2008. *Id*., PageID at 98-102. He stopped working the temporary jobs due to his increased back pain.

Plaintiff described his shoulder problems as involving "the rotator cuff, inside the rotator cuff.... It's like sand paper in there where it grinds where my shoulders pop. So and – as far as lifting, I can't [lift] ... my arms over my head. It pops." *Id*., PageID at 108. He noted, "as far as reaching over my head, behind my back, even any type of ... pulling, I can't do that at all because it puts too much on my shoulders and back." *Id*., PageID at 117.

During a typical day, Plaintiff might visit his brothers, do "a little" housework such as folding clothes, or other "light things." *Id*. He can walk for about 30 minutes, then the pain will start extending down into his leg. He estimated that he could walk a total of two blocks. He uses a cane when he walks. Plaintiff can stand for about 15 or 20 minutes. He cannot stoop, crouch, kneel, or crawl due to pain. Bending over increases his pain. The pain "never leaves." *Id*., PageID at 110-11. He can sit for about 15 or 20 minutes, and he adjusts his

3

position to try to relieve the pain.

Plaintiff further testified that he has atrial fibrillation, which causes his heart rate to increase or, as he says, it "goes off for like three, four minutes ...." *Id.*, PageID at 115. At one point, he had his heart monitored for "a week, but [it] showed nothing." *Id.*, PageID at 114. He does not take medication for this.

Plaintiff testified that he sees a counselor or therapist for anxiety, stress, and depression and takes Tramadol as well as a sleeping aid. *Id.*, PageID at 116.

### B. Medical Information and Opinions

In August 2009, Dr. Little, Plaintiff's primary care physician, diagnosed Plaintiff with lumbar radiculopathy. Dr. Little opined that Plaintiff could not bend, twist, stoop, or lift; stand for more than 15 minutes; or sit for more than one hour without break. (Doc. #6, PageID at 401-02). Dr. Little noted that Plaintiff's pain control was "inadequate" and needed additional intervention. *Id.*, PageID at 402. Dr. Little also concluded that Plaintiff had no limitations in grasping/fine motor tasks and had no limitations in mental/psychological tasks. *Id.*

On September 16, 2009, Dr. Padamadan examined Plaintiff at the request of the Ohio Bureau of Disability Determinations. He listed three diagnoses: "1. Low back pain without objective findings or functional impairment. 2. History of hepatitis C with incomplete treatment. 3. History of tobacco use now and cocaine use in the past." (Doc. #6, PageID at 432). Dr. Padamadan opined, "Based upon this clinical evaluation, in the absence of objective findings of any functional impairment, I do not see any indication for limitation of

4

physical activities." *Id*.

In November 2009, Dr. Green reviewed the record at the request of the Ohio Bureau of Disability Determinations. Dr. Green believed that Plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. (Doc. #6, PageID at 439). Dr. Green estimated that Plaintiff could stand/walk at least two hours in and eight-hour workday; sit less than six hours in an eight-hour workday; and had no limitation on his ability to push/pull, except for his lifting limitations. *Id*. Dr. Green placed only partial weight on Dr. Padamadan's opinion as Dr. Padamadan "state[d] no limitation of physical activities." *Id*., PageID at 444.

Dr. Bush examined the record and reported in July 2010 that Plaintiff was partially credible and that he could perform light work[2] beginning on August 1, 2007. *Id*., PageID at 479. She explained:

> He has MDI [medically determinable impairment] that could produce the symptoms but the intensity as alleged is not fully supported by the medical evidence of record. There is little longitudinal evidence in the file of ongoing complaints of pain despite multiple treatment modalities. He has few objective findings at the consultative examination 6/06 and 9/09. The treating source opinion is not given great weight, as it is not well supported by the medical evidence of record.

(Doc. #6, PageID at 479).

---

[2] The Social Security Administration defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a person] must have the ability to do substantially all of these activities...." *Id*.

Dr. Bell, Plaintiff's treating physician, began caring for Plaintiff in February 2010, after Dr. Little left their medical practice. *Id*., PageID at 626.  Dr. Bell explained that an MRI in October 2011 showed "moderately severe bilateral foraminal stenosis at L5-S1 level related to diffuse annulus bulging and hypertrophic facet arthropathy.  Borderline or mildly reduced canal dimensions are present at L4-L5 where there is also bilateral foraminal narrowing to a lesser degree." *Id*.  Among Dr. Bell's opinions, she concluded that Plaintiff could lift up to ten pounds occasionally and five pounds frequently; stand for four hours during an eight-hour workday and for two hours without interruption on any single occasion; occasionally balance stoop, crouch and kneel; and never crawl or climb.  *Id*., PageID at 628-29.  Dr. Bell also believed that Plaintiff cannot push/pull due to back pain. *Id*., PageID at 629.

### III.     The "Disability" Requirement and ALJ Withum's Decision

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements.  Chief among these is the "disability" requirement.  To receive Supplemental Security Income an applicant must be a "disabled individual," among other eligibility requirements. 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who have a medically determinable physical or mental impairment that is severe enough to prevent them from engaging in substantial gainful activity.  42

U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a disability, and thus eligible for SSI, ALJ Withum considered the evidence under the five Steps of the Social Security Administration's sequential-evaluation procedure. 20 C.F.R. §416.920(a)(4).

At the first several Steps, ALJ Withum concluded that (1) Plaintiff had not engaged in substantial gainful activity after the date he filed for benefits (July 9, 2009); (2) he has the severe impairments of lumbar degenerative disc disease with stenosis and bilateral shoulder degenerative joint disease; and (3) his impairments did not meet or equal the criteria of an impairment in the Listings.[3] (Doc. #6, PageID at 76-78).

At Step four of the sequential evaluation, ALJ Withum found that Plaintiff had the physical ability – the Residual Functional Capacity[4] – to perform medium work, meaning he had the ability to lift up to 50 pounds at a time and frequently lift up to 25 pounds. 20 C.F.R. §416.967(c). But, the ALJ also found that Plaintiff had the following limitations:

> [He] cannot climb ladders, ropes, and scaffolds and can only occasionally climb ramps or stairs, stoop, kneel, crouch and crawl. He can reach frequently with both arms, including overhead. Lastly he must avoid concentrated exposure to unprotected heights.

*Id*., PageID at 78. The ALJ then concluded that Plaintiff could not perform his past relevant work. And the ALJ noted that Plaintiff had a high school education and was age 59 on his

---

[3] The Social Security Administration's Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] "Residual Functional Capacity" is administrative lexicon referring to "the most a person can do" considering his or her existing physical and mental limitations. *See* 20 C.F.R. § 416.945(a); *see also* Social Security Ruling 96–8p, 1996WL 374184.

7

claimed disability onset date.[5]

At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs that existed in the national economy and that he was consequently not under a disability and not eligible to receive Supplemental Security Income.  *Id*., PageID at 81-82.

**IV.    Judicial Review**

The Social Security Administration's determination of disability – typically embodied in an ALJ's written decision – is subject to review in this Court along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence

---

[5] The asserted disability onset date for determining eligibility for Supplemental Security Income is the date the application was filed, here July 9, 2009.  *See* Social Sec. Ruling 83-20, 1983 WL 31249 at *7.  On the date of the ALJ's decision, January 14, 2012, Plaintiff was 62 years old.

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.     **Discussion**

   A.     **Medical Source Opinions**

Plaintiff contends that the ALJ failed to apply the procedural requirements mandated by law and failed to properly weigh the opinions of Dr. Bell and Dr. Padamadan. He further contends that the ALJ failed to provide good reasons to reject Dr. Bell's opinions and did not apply any of the factors applicable under the Regulations to Dr. Bell's opinions.

The Commissioner argues that the ALJ properly disagreed with Dr. Bell's opinions because Dr. Bell merely cited to Plaintiff's "diffuse pain" in support of her opinions. As to Dr. Padamadan, the Commissioner contends that the ALJ reasonably gave significant weight to his opinions due to the normal results of Plaintiff's examination and testing, including (for example) normal straight-leg tests, normal strength, and excellent range of motion in his shoulders, wrist, and fingers.

   The ALJ addressed Dr. Bell's opinions as follows:

   [O]n November 4, 2011, the claimant's primary care physician, Dr. Bell, opined that the claimant can only lift 10 lbs. and stand and walk for 4 hours total. The claimant can never climb or crawl. She believes the claimant is limited to sedentary work. I disagree with this opinion. The only evidence

9

> Dr. Bell cites for her limitation is an examination showing "diffuse pain" in the lumbar region, without any other findings. The actual examination referred to is not in evidence.

(Doc. #6, PageID at 80)(internal citations omitted).

Social Security Regulations recognize that the applicant's treating physicians are, in general, "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §416.927(d)(2). Generally, then, the Social Security Administration places more weight on the opinions provided by treating physicians than on the opinions of non-treating physicians. 20 C.F.R. §§416.927(d)(1)-(2); *see Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013). To earn "controlling weight," and hence dispositive status, the treating physician's opinion must be both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d at 376; *see Wilson v. Comm'r of Social Sec*., 378 F.3d 541, 544 (6th Cir. 2004); *see* 20 C.F.R. §416.927(d)(2).

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.

*Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing, in part, Social Security Ruling 96–2p, 1996 WL 374188 at *4).

In the event the ALJ decides to reject or discount a treating physician's opinion, the ALJ must adhere to an additional procedural requirement by providing "good reasons" for viewing unfavorably the treating physician's opinions. *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §416.927(d)(2).

> These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart*, 710 F.3d at 376 (quoting, in part, *Wilson*, 378 F.3d at 544).

The ALJ's review of Dr. Bell's opinion is inadequate for a number of reasons both legal and factual. The ALJ rejected Dr. Bell's opinions based on one observation – i.e., that the only evidence Dr. Bell pointed to in support of her opinions is an examination showing that Plaintiff had "'diffuse pain' in the lumbar region, without any other findings." (Doc. #6, PageID at 80). This is simply incorrect as a factual matter. Dr. Bell relied not only on Plaintiff's "diffuse pain" but also on a MRI done in October 2011 showing, "moderately severe bilateral foraminal stenosis at L5-S1 level related to diffuse annulus bulging and hypertrophic facet arthropathy. Borderline or mildly reduced canal dimensions are present at L4-L5 where there is also bilateral foraminal narrowing to a lesser degree." (Doc. #6, PageID at 626). Dr. Bell, moreover, repeatedly stated that she relied on Plaintiff's MRI

11

findings in October 2011. *Id.*, PageID at 627-630. Substantial evidence therefore fails to support the ALJ's conclusion that Dr. Bell only relied on Plaintiff's "diffuse pain" in support of her opinions.

The ALJ's singular reasoning also fails to indicate that she considered whether Dr. Bell's opinions were due controlling weight under the legal standards set by the Regulation. Elsewhere in the ALJ's decision, she states that she considered the Regulation applicable to evaluating treating physicians' opinions. (Doc. #6, PageID at 78). Without more, however, this does not transform the ALJ's single reason for rejecting Dr. Bell's opinions into "good reasons" for doing so. The ALJ's singular reasoning further fails to indicate that she considered or recognized the existence of the rebuttable presumption that gives great deference to treating a physician's opinion, "its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242. When this is combined with the ALJ's omission of any meaningful discussion of the remaining regulatory factors, the ALJ's decision falls far short of applying the correct legal criteria and providing good reasons for rejecting Dr. Bell's opinions.

The Commissioner contends that the ALJ correctly observed that the actual examination Dr. Bell referred to was not in the record. Yet, even without the specific examination in the record, Dr. Bell's opinion was supported at a minimum by the information in the record from Plaintiff's former treating physician, Dr. Little. This included that Dr. Little's observation that Plaintiff suffered from lumbar radiculopathy or

"disease of the nerve root,"[6] that his low-back pain radiated into his left leg, and that upon examination, he had low-back tightness and tenderness, limited range of motion, and left-leg weakness. (Doc. #6, PageID at 401).

The Commissioner also contends that any error the ALJ might have made was harmless because the ALJ evaluated the opinion and explained why she did not credit Dr. Bell's opinions. But the ALJ did not evaluate Dr. Bell's opinion under the correct legal criteria, as explained above, and substantial evidence did not support the ALJ's conclusion that Dr. Bell only relied on Plaintiff's diffuse pain. Additionally, a review of Dr. Bell's opinions regarding Plaintiff's limitations does not reveal that Dr. Bell's opinions were "so patently deficient that the Commissioner could not possibly credit [them]." *Wilson*, 378 F.3d at 547. The record thus fails to show that the ALJ's error was harmless. *See id*.

The Commissioner contends that the ALJ reasonably relied on the opinions provided by consultative examiner Dr. Padamadan.

The ALJ reviewed Dr. Padamadan's opinions as follows:

> ... I give significant weight to Dr. Padamadan's consultative examination on September 16, 2009. Dr. Padamadan concluded that the claimant is able to sit, stand and walk without limitations, based upon the medical findings. The only medical finding that Dr. Padamadan indicated was reduced range of motion, but not to a significant degree. Dr. Padamadan's opinion is consistent with the medical evidence and is not based mostly upon the claimant's subjective complaints.

(Doc. #6, PageID at 80)(internal citations omitted).

---

[6] Taber's Cyclopedic Medical Dictionary at 1743 (19th Ed. 2001).

13

Unlike treating physicians, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Gayheart*, 710 F.3d at 376 (internal citations omitted); *see* 20 C.F.R. § 416.927(d)(2)-(6).

Dr. Padamadan recognized that the record he reviewed and considered at the time he examined Plaintiff did not contain objective medical evidence supporting any physical limitations.  This was likely correct on the particular date Dr. Padamadan's signed his report, September 16, 2009.  While an x-ray was also taken that same day, the radiologist – Dr. Rubenstein – did not dictate her x-ray report until September 21, 2009.  The Commissioner points out that Dr. Padamadan's initials appear on the last of his report after the statement, "My initials following this statement indicate that I reviewed any procedures that were ordered on this claimant (EKG, PFS, laboratory work, or x-ray studies)."  (Doc. #6, PageID at 432).  Without more information, however, such as a specific reference to Dr. Rubenstein's report, Dr. Padamadan's initials do not conflict with his statement that the medical records he reviewed lacked objective evidence supporting Plaintiff's description of his pain – even though such objective evidence existed.  This means either Dr. Padamadan did not know about the x-ray results or he knew about the results and overlooked the significant objective findings it produced – particularly, "marked narrowing of L5-S1."

14

(Doc. #6, PageID at 437).  Either way, Dr. Padamadan's opinion was not based on the actual condition of Plaintiff's back as depicted in the x-rays taken on September 16, 2009.  During the ALJ's hearing, Plaintiff's counsel identified this shortcoming in Dr. Padamadan's opinions.  But the ALJ did not address it when placing significant weight on Dr. Padamadan's opinion.

Other evidence, moreover, does not support Dr. Padamadan's finding that Plaintiff has absolutely no physical restrictions at all or that Dr. Padamadan's opinion "is consistent with the medical evidence and is not based mostly upon [Plaintiff's] subjective complaints." Dr. Padamadan's opinion is in sharp contrast to every other medical source opinion of record.  This includes Dr. Little, who upon examining Plaintiff in July 2009 found low-back tightness and tenderness, limited range of motion, and left leg weakness.  (Doc. #6, PageID at 401).  Even Dr. Green – who reviewed the record for the Ohio Bureau of Disability Determinations – only placed "partial weight" upon Dr. Padamadan's consultative opinion. Dr. Green explained that he disagreed with Dr. Padamadan's opinion that Plaintiff have any limitations due to the x-ray showing marked narrowing of L5-S1.  (Doc. #6, PageID at 444). Dr. Green, moreover, supported his opinion about Plaintiff's ability to lift, carry, stand, walk, and sit during an eight-hour workday by relying on Plaintiff's MRI in 2001, which he noted "showed spinal stenosis at L5-S1 with impingement" as well as Dr. Little's[7] findings on examination.  (Doc. #6, PageID at 431, 439).  And, Dr. Padamadan's opinion is not

---

[7] Dr. Green referred to Dr. Little as "T/S" or treating source.  (Doc. #6, PageID at 439).  This is clear upon examination of Dr. Little's opinions, which are as Dr. Green describes.  *Id.*, PageID at 401.

15

consistent with Dr. Bell's opinion or the objective evidence upon which Dr. Bell relied, including the October 2011 MRI showing significant deterioration in the condition of lumbosacral spine – namely, "moderately severe bilateral foraminal stenosis at L5-S1 relate to diffuse annulus bulging and hypertrophic facet arthropathy...," and additional problems at L4-L5. (Doc. #6, PageID at 626).

Accordingly, Plaintiff's Statement of Errors is well taken.[8]

### B. Reversal And Remand For Benefits

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for further proceedings or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A reversal of the ALJ's decision and a judicial award of benefits is warranted in the present case due to the errors identified previously and because the evidence of disability is

---

[8] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's credibility determination or Plaintiff's submission of additional evidence is unwarranted.

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  The strong evidence consists of the opinions provided by Plaintiff's treating physician, Dr. Bell; Dr. Green, who reviewed the record at the request of the Ohio Bureau of Disability Determination; Dr. Little, Plaintiff's former treating physician; Dr. Bush, who examined the record in July 2010; the September 2009 x-ray report of Dr. Rubenstein; and the October 2011 MRI results described by Dr. Bell.  The weak contrary evidence consists of Dr. Padamadan's September 2009 opinions, which were not based on a complete record and pre-dated the objective MRI evidence in 2011 as well as the opinions provided by Plaintiff's treating physician Dr. Bell and the state-agency physician Dr. Green.

In addition, Grid Rule 202.06 directs a finding of "disabled" due to Dr. Green's opinion that Plaintiff could perform light work and given Plaintiff's age ("advanced"), education (high school graduate – "does not provide for direct entry into skilled work"), and work experience ("skilled or semi-skilled – skills not transferable").[9]  *See* Grid Rule 202.06, Appendix 2, Subpart P, Part 404; *see also* 20 C.F.R. § 416.969.

Accordingly, an Order remanding this case for benefits is warranted.  *See Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

**IT THEREFORE IS RECOMMENDED THAT**:

---

[9] Plaintiff applies light work in his application of the Grids, but he incorrectly cites Grid Rule 201.14 (doc. #7, PageID at 643), which applies to sedentary work and to those of those "closely approaching advanced age."  Rule 202.06 is the correct Grid Rule for a person capable of light work.  The category of "advanced" age applies to Plaintiff on his alleged disability onset date (July 9, 2009), as the ALJ found (doc. #6, PageID at 80).

17

1. The Commissioner's final non-disability decision be reversed;

2. Plaintiff Lester Allen case be REMANDED to the Social Security Administration for payment of Supplemental Security Income consistent with the Social Security Act; and

3. The case be terminated on the docket of this Court.

March 27, 2014

                                                s/Sharon L. Ovington
                                                Sharon L. Ovington
                              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).